UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS ROBLES,<br><br>        Plaintiff,<br><br>    v.<br><br>AGRESERVES, INC., et al.,<br><br>        Defendants. | Case No.: 1:14-cv-00540-AWI-JLT<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>(Doc. 4) |

Juan Carols Robles ("Plaintiff") seeks to have this action remanded to Kern County Superior Court. (Doc. 4.) Defendant AgReserves, Inc., doing business as South Valley Farms ("AgReserves"), opposes remand, asserting the Court has subject matter jurisdiction. (Doc. 8.) The Court found the matter suitable for decision without argument and took the matter under submission pursuant to Local Rule 230(g) on June 20, 2014. For the following reasons, Plaintiff's motion to remand is **DENIED**.

I.      **Factual and Procedural Background**

Plaintiff initiated this action in Kern County Superior Court, Case No. S-1500-CV-281375-DRL, by filing a complaint against AgReserves, Inc.; The Church of Jesus Christ of Latter Day Saints; South Valley Farms; Jorge Campos;[1] and Jay Payne. (Doc. 1-1 at 5.) Plaintiff alleges he was employed by AgReserves and the Church of Jesus Christ of Latter Day Saints "as a pesticide and chemical driver, and a farm worker," beginning in February 2013. (*Id.* at 7, ¶ 8.) Plaintiff alleges

---

[1] The correct name of "Jorge Campos" is George Campo. (*See* Doc. 6 at 1.)

1

Campo was his "supervisor and foreman" and is "a Mormon belonging to the Church of Jesus Christ of Latter Day Saints." (*Id.*) Plaintiff is "Mexican and Catholic," and asserts that he "was subjected to . . . [a] continuous, severe, and pervasive campaign" of harassment based upon his national origin and religion by Campo. (*Id.* at 7-8, ¶¶ 8, 10.) In addition, Plaintiff alleges that while he worked for the defendants, he was not "allowed to take his 30 minute meal breaks and any rest breaks," and that Campo "hit[] him when he asked for meal breaks." (*Id.* at 9, ¶15.)

Plaintiff alleges Campo commented on the 'Stupid Mexicans' referring to Plaintiff almost every day." (Doc. 1-1 at 7, ¶9(a).) Plaintiff asserts Campo "thought and told Plaintiff several times that he was above all the Mexicans." (*Id.* at 8, ¶9(c).) Plaintiff asserts that one day, Campo "shot . . . his hunting rifle at the direction o[f] Plaintiff and other workers." (*Id.* at 7, ¶9(c).) According to Plaintiff, this "shooting incident was harassment based on Plaintiff's national origin." (*Id.*) Further, Plaintiff asserts Campo would make comments "almost every day" regarding his religion, such as:

"Your religion is nothing, less than my religion;"

"I'm a better person than you guys because your religion is less than my religion;"

"You are less than me. I have a better job than you guys. I'm a Mormon and you guys are less than me;" and

"My religion is on top. We are better than anyone else."

(Doc. 1-1 at 8, ¶ 10.) Plaintiff asserts he complained to Jay Payne, the manager, regarding Campo's actions on or about February 11, 2013, but his complaints were ignored. (*Id.* at 9, ¶ 11.)

According to Plaintiff, in mid-February 2013, he complained to Campo "about not getting meal and rest breaks and asked to be allowed a meal break." (Doc. 1-1 at 9, ¶ 16.) He asserts that Campo "hit [his] arm continuously several times and started driving his truck," in which Plaintiff was the passenger." (*Id.*) Plaintiff alleges that he "asked to get out of the truck," but Campo "did not stop and continued driving for about 15-20 minutes falsely imprisoning Plaintiff against his will." (*Id.*)
On another occasion, Plaintiff asserts Campo "caused a danger chemical/pesticide to be thrown under Plaintiff's truck" after Plaintiff "made safety complaints . . . stating that the chemical that the Defendants were using were creating health hazard s (sic) for Plaintiff burning and scaring his face." (*Id.* at 10, ¶17.) Further, Plaintiff complained the truck he was given was "dangerous to drive" because

it had bad brakes and "the tractor seat was loose which caused Plaintiff to injure his knee." (*Id.*)

Plaintiff alleges that he complained to Payne again on March 20, 2013 that Campo "was harassing him about religion, and his national origin, shooting at him, [and] throwing chemicals under his car, all because of religion and ethnicity." (Doc. 1-1 at 9, ¶ 12.) Plaintiff alleges Payne told him to put the complaints in writing, which he presented to Payne "on or about March 28, 2013, and on April 2, 2013. (*Id.*) According to Plaintiff, on April 2, 2013, he was "fired . . . in discrimination and in retaliation for complaining of harassment based on religion and national origin," and "in retaliation for complaining and needing meal breaks." (*Id.*, ¶¶ 13, 15, 17.) He asserts that when he was fired, Payne "prevented his exit from the office for about 5 minutes over his protest because Plaintiff refused to sign the termination papers since he did not agree with them." (*Id.* at 44, ¶ 137.)

Based upon these facts, Plaintiff "filed charges of harassment, discrimination, and retaliation" based upon national origin and religion on April 4, 2013. (Doc. 1-1 at 10-15, ¶¶ 19-22, 36-39). The EEOC issued a Notice of Case Closure/Right-to-Sue Letter on February 6, 2014. (*Id.*, ¶ 19, 39.) In the operative complaint, Plaintiff raises sixteen causes of action for violations of Title VII; violations of California's constitution and Fair Employment and Housing Act; failure to provide rest and meal periods in violation of Cal. Labor Code § 226.7 and related Wage Orders, seeking penalties for these violations; wrongful termination in violation of public policy; and the common law torts of battery, assault, false imprisonment, and intentional infliction of emotional distress. (*See generally* Doc. 1-1.)

On April 16, 2014, AgReserves filed a Notice of Removal, asserting the Court has subject matter jurisdiction over the complaint because Plaintiff "alleged claims brought under Federal law, including Harassment, Discrimination and Retaliation based on national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and Harassment, Discrimination, and Retaliation based on religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq." (Doc. 1 at 2.) Plaintiff filed his motion to remand on May 16, 2014, asserting "diversity and federal question jurisdiction does not exist and the removal was procedurally defective." (Doc. 4 at 3.) Plaintiff asserts the "[f]ederal jurisdiction is not exclusive with respect to [his] Title VII claims" and requests that the Court "decline jurisdiction because state causes of action are substantially predominate in this case." (*Id.* at 3.)

3

## II. Removal Jurisdiction

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987). Specifically,

> Except otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331.

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading. *Id.* at § 1446(b). Removal statutes are to be strictly construed, and any doubts are to be resolved in favor of state court jurisdiction and remand. *See Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of proving its propriety. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683-85 (9th Cir. 2006); *see also Calif. ex. rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute"). The Court may remand an action to state court for lack jurisdiction or for defect in the removal procedure. 28 U.S.C. § 1447(c).

## III. Discussion and Analysis

As an initial matter, Plaintiff asserts that "the removal notice only refers to 28 USC § 1441(b) as the basis for removal." (Doc. 4 at 5.) However, AgReserves noted the removal was proper because Plaintiff "alleged claims brought under Federal law." (Doc. 1 at 2.) It appears the citation to 28 U.S.C. § 1441(b) was made in error, and AgReserves filed an Amended Notice of Removal correcting the citation to 28 U.S.C. §1441(a), which permits the removal for actions over which the Court has original jurisdiction. Because AgReserves seeks removal on the grounds that the Court has subject matter jurisdiction, the Court need not address the issue of diversity of citizenship under § 1441(b).

### A. Procedural Defect

Plaintiffs assert the Notice of Removal filed by AgReserves is procedurally defective, because "the individual defendants are not joined to the notice removal." (Doc. 4 at 5.) In cases involving

multiple defendants, such as the current matter, the "rule of unanimity" requires that all defendants must join in a removal petition. *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 393 (1998) (citing *Chicago, Rock Island, & Pacific Railway Co. v. Martin*, 178 U.S. 245, 248 (1900)); *see also Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981) ("all defendants who may properly join in the removal petition must join"). The "rule of unanimity" applies "only to defendants properly joined and served in the action." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

In the Notice of Removal, AgReserves asserted Jorge Campos and Jay Payne were not "formally served as of the filing." (Doc. 1 at 2.) In response, Plaintiff asserts that he "served the individual Defendants on March 17, 2014 via substitution of service which is proper because both Defendants lived and worked . . . where they were served." (Doc. 4 at 3, citing Guleser Decl. ¶¶4-6 and Exh. 2-3.) Although maintaining they did not receive service when Plaintiff alleges, Jay Payne and Jorge Campos filed their answers to the complaint on June 6, 2014, and indicated their consent to removal. (Docs. 6,7.)

Importantly, the Ninth Circuit has determined that a defendant may join the removal after the notice has been filed. *See, e.g., Destfino v. Reiswig*, 630 F.3d 952, 956-57 (9th Cir. 2011) (while all properly-served defendants must join in a petition for removal, "[i]f this is not true when the notice of removal is filed, the district court may allow the removing defendants to cure the defect by obtaining joinder of all defendants prior to the entry of judgment"); *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 970 (9th Cir. 2002) (a procedural defect that has been cured "does not warrant … remand of the matter to state court"). Because the defendants consented to removal, the procedural defect identified by Plaintiff has been cured, and remand is not warranted. *See Soliman*, 331 F.3d at 970.

**B.     Subject Matter Jurisdiction**

The district court is a court of limited jurisdiction, and is empowered only to hear disputes "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Exxon Mobil Corp v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Pursuant to 28 U.S.C. § 1331, the district court has jurisdiction over civil actions arising under federal laws. The Ninth Circuit explained that an action "arises under" federal law "where federal law creates the cause

of action or where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002) (citation, internal quotation marks omitted). The presence of subject matter jurisdiction is governed by the "well-pleaded complaint rule," under which the Court has jurisdiction "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Here, Plaintiff's first and second causes of action for "harassment, discrimination and retaliation" arise under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, et seq. (Doc. 1-1 at 10, 14.) Although Plaintiff asserts "federal question does not exist" over these claims (Doc. 4 at 9), Title VII provides that "[e]ach United States district court . . . shall have jurisdiction of actions brought under this title." 42 U.S.C. § 2000e-5(f)(3). However, the Court has subject matter jurisdiction over Title VII claims only when a plaintiff has exhausted his administrative remedies. *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002). Here, Plaintiff alleges that he exhausted his administrative remedies and has received a "right-to sue letter" from the EEOC. (*See* Doc. 1-1 at 10-15, ¶¶ 19-22, 36-39). Consequently, a federal question is presented on the face of Plaintiff's complaint, and the Court has subject matter jurisdiction over the action. *See* 28 U.S.C. § 1331.

### C. Supplemental Jurisdiction

When the Court has original jurisdiction over an action, the Court "shall have supplemental jurisdiction over all other claims" that are "part of the same case or controversy." 28 U.S.C. § 1367(a). "Nonfederal claims are part of the same 'case' as federal claims when they 'derive from a common nucleus of operative fact' and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'" *Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (quoting *Finley v. United States*, 490 U.S. 545, 549 (1989)) (internal quotations omitted). However, the Court "may decline to exercise supplemental jurisdiction over a claim" when:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. 1367(c). Further, the Supreme Court has determined the Court may decline supplemental jurisdiction "where the alleged claims under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

Here, Plaintiff asserts the that Court "should decline supplemental jurisdiction" because "[o]nly two causes of action out of 16 causes of action are based on Title VII" and "[s]tate law causes of action constitute 87% of this complaint." (Doc. 4 at 4, 9.) According to Plaintiff, his "claims of FEHA, meal and rest break penalty, common count for work and labor performed, reasonable value of work labor performed (quantum meriut), California Labor Code Section 226 penalties, California Labor Code Section 558 penalties, and California Labor Business and Professions Code violations substantially dominate the case." (*Id.* at 8-9.) Plaintiff observes that these claims, as well as his claims for wrongful termination and intentional infliction of emotional distress, "have different elements of proof and different damages than the Title VII claims." (*Id.* at 9.)

On the other hand, AgReserves argues the Court should exercise supplemental jurisdiction over the causes of action based upon state law because Plaintiff's "federal and state law claims involve substantially the same facts and witnesses." (Doc. 8 at 13.) AgReserves asserts each cause of action "is based upon events that occurred during [Plaintiff's] two months of employment at AgReserves." (*Id.*) Summarizing the claims in issue, AgReserves asserts:

> Robles allege the Campo harassed, discriminated, retaliated against, assaulted, and falsely imprisoned him based upon Robes' national origin and his religion, and for complaining about not getting his breaks and unsafe work practices. [Citation.] Robles also insists that when he complained to AgReserves and Payne about his events, he was fired in retaliation and falsely imprisoned.

(*Id.*, citations omitted.) According to AgReserves, the evidence the company "would . . . present in its defense would be substantially the same as the claims are of the sort that would normally be tied together." (*Id.* at 13-14.)

As AgReserves observes, Plaintiff's state law claims share a common nucleus of facts supporting the claims arising under Title VII. Specifically, Plaintiff alleges he "complained of harassment and discrimination by CAMPO[] based on religion, national origin, and unsafe conditions in the workplace *such as* unsafe handling of chemicals by CAMPO[], unsafe tractor treat, *not being*

7

*allowed to take meal and rest breaks* and battery and assault by CAMPO[]." (Doc. 1-1 at 35 ¶ 117, emphasis added.) Based upon the allegations of the complaint, the state wage and hour claims for failure to provide rest and meal breaks, as well as the intentional torts, involve the same facts as those supporting Plaintiff's claims for discrimination and retaliation in violation of Title VII. Consequently, the state law claims do not predominate over the federal cause of action, because the state and federal claims would require Plaintiff to establish the same facts. *See Picard v. Bay Area Reg'l Transit Dist.*, 823 F.Supp. 1519, 1527 (N.D. Cal. 1993) (concluding that state law claims did not predominate where the same conduct formed the basis of the state and federal claims and would require "virtually the same evidentiary presentations at trial"). In light of the common underlying facts, Plaintiff "would ordinarily be expected to try [all of his claims] in one judicial proceeding." *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Accordingly, it is appropriate for the Court to exercise supplemental jurisdiction over Plaintiff's claims arising under state law.

**IV.     Conclusion and Order**

AgReserves has carried its burden to demonstrate that the Court has jurisdiction over the matter, because the Court has original jurisdiction over the Title VII claims. *See Gaus*, 980 F.2d at 677-67. Plaintiff's assertion that the Court should not exercise jurisdiction over the matter is unavailing because the state law claims do not substantially predominate the action.

According, **IT IS HEREBY ORDERED** that Plaintiff's motion to remand is **DENIED**.

IT IS SO ORDERED.

Dated:   **June 26, 2014**                           **/s/ Jennifer L. Thurston**
                                                                            UNITED STATES MAGISTRATE JUDGE